## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NELSON WORLDWIDE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SIMMONS,<br><br>Defendant. | Civil Action No. 2:24-cv-621<br><br>JURY TRIAL DEMANDED |

### VERIFIED COMPLAINT FOR INJUNCTIVE AND DAMAGES

Plaintiff Nelson Worldwide, LLC ("Plaintiff," "Nelson," or "Company"), by and through its undersigned counsel, hereby files the following Complaint for Injunctive and Other Relief, and Damages against former employee, Defendant, Andrew Simmons ("Defendant" or "Simmons") alleging violations of (i) Trade Secrets Act of 2016 (DTSA), 18 U.S.C. § 1836 *et seq.*; (ii) misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act (PUTSA), 12 Pa. C. S. §5301 *et seq.*; (iii)  Breach of Contract and (iv) Tortious Interference with Business and Contractual Relationship. In support thereof, avers the following:

### THE PARTIES

1.  Plaintiff, Nelson Worldwide, LLC, is an architecture firm that provides architectural, interior design, graphic design services to clients nationally and globally. Plaintiff operates out of approximately 20 different offices in the United States and services over 800 clients globally. Nelson is headquartered in Minneapolis, Minnesota, has an office in Philadelphia and is registered to do business in Pennsylvania.

2.  Andrew Simmons, is an adult individual who, upon information and belief, resides

in or around Philadelphia, Pennsylvania.

3.   Simmons was employed by Plaintiff from February of 2015 until January 17, 2024 and was a Director, Senior Project Manager at the end of his employment.

4.   On or about January 3, 2024, Simmons resigned from his position at Nelson Worldwide, LLC.

5.   Simmons stayed on the job until January 17, 2024.

## JURISDICTION AND VENUE

6.   Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because Nelson has asserted claims for statutory misappropriation of trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*, violations of the Computer Fraud and Abuse statute, The Copyright Act of 1976 and all other claims are so related to Nelson's federal claims that they form part of the same case or controversy under Article III of the United States Constitution. Immediate injunctive relief is sought pursuant to Fed. R. Civ. P. 65.

7.   Venue is proper in the United States District Court for the Eastern District of Pennsylvania because the conduct alleged arose in this judicial District. As discussed in detail herein, Defendant has and continues to cause significant injury and damages to Nelson, which is registered to do business in Pennsylvania, by his illicit and unlawful actions.

8.   Simmons also agreed to jurisdiction of this Court pursuant to the terms of the Non-Disclosure, Non-Solicitation and Property Rights Agreement (hereinafter "Agreement") which he executed on February 6, 2015. A true and correct copy of the Agreement is attached hereto as Exhibit "A."

**FACTUAL BACKGROUND**

9.   Defendant Andrew Simmons began his employment with Plaintiff Nelson in

February 2015 as a Job Captain.

10. Upon his hiring and for consideration, Simmons signed the Agreement which

states, in part:

a.   ***Disclosure of Information.*** During my engagement with NELSON, I will
have access to certain information not generally known to the public or the
competitors of NELSON relating to the business of NELSON, including,
but not limited to, information concerning NELSON's services and sales,
customers and prospective customers, pricing formulae, current or future
marketing strategies, sources of supply, computer programs, data bases,
system documentation, manuals, formulae, processes, methods, designs,
machines, ideas, improvements and/or other proprietary and confidential
information belonging to NELSON or relating to NELSON's affairs
(collectively, "Confidential Information"). With respect to the Confidential
Information, I agree as follows:

i.   I acknowledge that all Confidential Information is the confidential
and exclusive property of NELSON and may not be disclosed to
anyone for any purpose whatsoever except to employees of
NELSON in furtherance of NELSON's business. I shall not disclose
to any other person or entity any of the Confidential Information,
without the prior written consent of NELSON. I shall not make any
use of Confidential Information except in the discharge of my
obligations and duties while engaged by NELSON. I shall take
proper and appropriate steps at all times to protect the Confidential
Information. The foregoing requirements as to confidentiality and
nondisclosure shall not apply to information that is in the public
domain or becomes part of the public domain through no fault of
mine or that is in my possession prior to receipt from NELSON. The
foregoing requirements of confidentiality shall survive termination
of my engagement with NELSON.

ii.   All documents, records, apparatus, equipment, and other physical
property furnished to me by NELSON, or produced by myself or
others in connection with their engagement with NELSON shall be
and remain the property of NELSON solely and shall be returned to
NELSON immediately as and when requested by NELSON. Even
if NELSON does not so request, I shall return and deliver all such
property to NELSON upon termination of my engagement.

    b. ___*Non-Solicitation Covenant.*___ During the period that I am engaged by NELSON to render services and for a period of one (1) year thereafter, I covenant and agree that I shall not, without the prior written consent of NELSON, directly or indirectly, (i) solicit, induce, divert, employ, engage or otherwise interfere with any of NELSON's employees, agents or 1099 consultants, and/or (ii) solicit or otherwise do business with any current customer or known potential customer of NELSON as of my termination date so as to offer, sell or provide any product or services that would be competitive with any products or services sold, provided by or being developed by NELSON during the period that I am engaged by NELSON, and/or (iii) attempt to persuade any current customer, known potential customer, vendor or supplier of NELSON as of my termination date to discontinue its relationship with NELSON.

11. Furthermore, the Agreement between Plaintiff and Defendant states the following, in pertinent part, regarding remedies should there be a breach of the Agreement by Defendant:

    a. ___*Remedies.*___ NELSON and I agree and stipulate that the agreements and covenants as set out above in Sections 1, 2 and 3 (collectively, the "Covenants") are fair and reasonably necessary for the protection of the business, goodwill, trade secrets and other protectable interests of NELSON. I agree that, in the event I breach or threaten to breach any of the Covenants, NELSON shall be entitled to both a preliminary or permanent injunction to prevent the continuation of such harm. Nothing contained herein shall be construed to prohibit NELSON from also pursuing any other remedies. In the event that NELSON institutes suit to enforce this Agreement, NELSON shall be entitled to recover reasonable attorney's fees and costs in connection with such enforcement.

12. By signing the Agreement, Defendant agreed that the terms and covenants of the Agreement were fair and reasonably necessary for the protection of Plaintiff's business, goodwill, trade secrets and other protectable interests.

13. Over the years, Simmons was promoted and held the title of Senior Project Manager in January of 2024.

14. While employed with Plaintiff, Defendant had access to various customer, pricing

formulae, marketing strategies, computer programs, data bases, manuals, formulas, methods, architectural designs, and other confidential and proprietary information that enabled him to provide effective service to Plaintiff's customers.

15. Simmons, who was based out of the Philadelphia Office of Nelson, was responsible for hundreds of projects which generated and still generate profit for Nelson.

16. On January 3, 2024, Defendant submitted a letter of resignation to Plaintiff with his stated reason for ending his employment with Plaintiff being "to explore new opportunities and continue his growth in his professional journey." A true and correct copy of the resignation letter is attached hereto as Exhibit "B."

17. Simmons stayed on the job at Nelson until January 17, 2024.

18. On or about January 16, 2024,  Simmons began sending detailed project data which included copyrighted architectural plans, photos, layouts, client information and other proprietary and confidential information belonging to Nelson.

19. Specifically, Simmons began creating new folders, uploading the project data to those new folders, creating and anonymous link and then deleting the items in an attempt to cover his misdeeds. A true and correct copy of the information uploaded is attached hereto as Exhibit "C." [1]

20. Following his departure from Plaintiff, Defendant began working for competing company, Stantec[2], in which Defendant's job duties are similar in nature to the duties while employed with Plaintiff.

---

[1] Plaintiff has filed a Motion to File Under Seal to protect the information stolen by Simmons. If the Motion is granted, Plaintiff will upload the Excel Spreadsheets including the links to the information.
[2] At this time, Plaintiff does not have evidence that Stantec is aware of Simmons' breach of the Agreement; however, Plaintiff reserves the right to amend this Complaint to include Stantec if discovery indicates Stantec knew of Simmon's illegal activity.

21. On January 26, 2024, Nelson's Senior Project Manager of Healthcare, Ike Obgue, received an email from a current healthcare client advising that they were terminating services with Nelson. *See* Email from K.C. to Ike Obgue dated January 26, 2024, attached hereto as Exhibit "D."

22. K.C. is the CEO of the healthcare company and plans and other information for that job were among the files Simmons illegally took from Nelson.

23. Mr. Obgue reached out to K.C. via email and telephone requesting the reasons for termination of a project that was only halfway complete.

24. K.C. left Obgue a voicemail stating that Simmons had advised her that Nelson was "relocating to Florida" and she did not want to lose the two key players she had been working with up until that point, include Simmons. A copy of the voicemail message can be forwarded to the Court, if requested, and will be marked as Exhibit "E."

25. On February 6, 2024, Kyle Peterson, Nelson's National Business Leader, received a call from another current client inquiring how Nelson plans to staff its project when they do not have anyone in Philadelphia.

26. The files for that healthcare client were also illegally downloaded by Simmons before his departure.

27. The business at issue is estimated to be worth hundreds of thousands of dollars.

28. Despite the Agreement he signed, Defendant continues to interfere with Plaintiff's relationships with customers and vendors. The clients who have contacted Plaintiff include ███

██████████████████████████████████████████████████████████████

██████████████████████████

29. Furthermore, Simmons is advising Nelson's current clients that Nelson is

"relocating to Florida" implying that if they don't hire Simmons there will not be anyone available to help finish their projects.

**COUNT I**
**MISAPPROPRIATION/CONVERSION OF TRADE SECRETS**
**AND/OR CONFIDENTIAL BUSINESS INFORMATION UNDER THE DEFEND**
**TRADE SECRETS ACT OF 2016 (18 U.S.C. § 1836(b)(1))**

30. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

31. While employed by Plaintiff, Simmons obtained access to Nelsons' confidential trade secret information.

32. The trade secret information retained by Nelson includes, at a minimum, the information described in the Agreement.

33. As set forth in the Agreement, Nelson considers this type of information and items to be confidential and proprietary, and it has taken reasonable steps as part of its ongoing standard operating procedures to maintain the confidential nature of this information.

34. Upon information and belief, Simmons has utilized and is continuing to utilize Nelsons' confidential, proprietary and trade secret information to remove or divert business to a competitor.

35. In doing so, Defendant is maliciously and willfully using misappropriated confidential, proprietary, and trade secret information to his own advantage in direct competition with Nelson.

36. As a result of the Defendant's misappropriation and use of the confidential,

proprietary and trade secret information, Defendant has violated the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836(b)(1)).

37. As a direct and proximate result of Defendant's violation of the Defend Trade Secrets Act of 2016, Nelson has sustained substantial irreparable harm and damages.

38. The above-described actual and/or threatened conduct of Defendant is the direct and proximate cause of immediate and irreparable harm Nelson.

39. The Defendant's actual and/or threatened actions will continue to cause Nelson irreparable harm if not enjoined.

WHEREFORE, Nelson Worldwide, LLC respectfully requests judgment in its favor, and against Defendants, as set forth in its Prayer for Relief.

## COUNT II
## MISAPPROPRIATION/CONVERSION OF TRADE SECRETS AND/OR CONFIDENTIAL BUSINESS INFORMATION UNDER THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT

40. Nelson re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

41. At all times material, the Defendant knew, or should have known, that Nelson's Confidential Information is deserving of trade secret protection under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C. S. § 5301 *et seq*., inasmuch as:

     a.     Nelson invested substantial resources to create, develop, compile, and maintain this information;

     b.     the information for these projects is not known outside of Nelson;

     c.     Nelson takes significant precautions to safeguard the confidentiality of this information, including but not limited to

requiring its employees to execute confidentiality agreements and other restrictive covenants;

d.      the information cannot be replicated, compiled, or recreated by a competitor without substantial time, effort, and expense.

e.      Nelson's Confidential Information is of significant value to Nelson and is extremely important in the conduct of its business, and would be extremely valuable to Simmons.

42. Nelson disclosed its Confidential Information to Simmons while he was in a positions of trust and confidence and under circumstances that make it inequitable and unjust for them to have misappropriated the materials and to be using them for their own benefit and for the benefit of Defendant.

43.   By copying, taking, using, and/or disclosing Nelson's Confidential Information, the Defendant has misappropriated Nelson's trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act.

44. The Pennsylvania Uniform Trade Secrets Act provides for injunctive relief in the case of an "actual or threatened" misappropriation of a trade secret. 12 Pa. C.S.A. § 5303(a).

45. The Defendant's actions in converting and misappropriating Nelson's confidential, proprietary, and trade secret information for their own gain was willful, wanton, and malicious, and was taken with reckless disregard for the rights of Nelson.

46. Upon information and belief, Simmons directed, participated, and/or benefited from misappropriation of Nelson's trade secrets.

47. In the alternative, if Nelson's Confidential Information does not constitute trade

secrets within the meaning of the Pennsylvania Uniform Trade Secrets - and it does - the Defendant are nonetheless liable for the wrongful conversion of such confidential and proprietary materials.

48. The above-described actual and/or threatened conduct of Defendant is the direct and proximate cause of immediate and irreparable harm to Nelson.

49. The Defendant's actual and/or threatened actions will continue to cause Nelson irreparable harm if not enjoined.

WHEREFORE, Nelson respectfully requests judgment in its favor, and against Defendant, as set forth in its Prayer for Relief.

## COUNT III
### BREACH OF CONTRACT
#### (Equitable and Declaratory Relief)

50. Nelson re-alleges and incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

51. Simmons was and is subject to the non-disclosure and non-solicitation provisions set forth in the Agreement.

52. Simmons actions to date indicate that he:

    a.  directly or indirectly is using and/or disclosing Plaintiff's confidential and proprietary information in violation of the Agreement including highly confidential client information and plans;

    b.  directly or indirectly contacting and/or soliciting, or attempting to contact or solicit, Plaintiff's existing or prospective customers for the purpose of inducing them to terminate their relationship with Plaintiff and/or for the purpose of having any such customer do business with or commence a relationship with Simmons and/or a competitor to Plaintiff;

      c.  advising Nelson's clients that Nelson is leaving Philadelphia and is relocating to Florida to usurp Nelson's current business and prospective business.

53. As a direct and proximate result of Simmons's breaches, Plaintiff has suffered and will suffer immediate and irreparable harm and damages, including injury to Plaintiff's business position, competitive advantage, customer relationships and goodwill, that are difficult to quantify.

54. Plaintiff is entitled to injunctive and declaratory relief against Simmons.

55. Plaintiff will suffer immediate and irreparable harm if an injunction is not granted by the Court.

56. Plaintiff does not have an adequate remedy at law, and the immediate and irreparable harm that Plaintiff will suffer in the absence of an injunction cannot be compensated by damages.

57. The actions sought to be restrained are actionable and Plaintiff has a clear right to relief.

58. Greater harm will occur by refusing the injunction than would result to Simmons if the injunction is granted.

59. The issuance of the injunction will restore the parties to their status quo as it existed prior to Simmons's wrongful conduct.

60. Pursuant to the Agreement, Plaintiff is entitled to the attorneys' fees and costs that Plaintiff incurs in bringing and prosecuting this action for violations of the Employment Agreement.

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief in its favor and against Defendant Simmons:

a. Preliminary and permanent injunctive relief:

  1. prohibiting Simmons from violating his continuing obligations under the Agreement;

  2. prohibiting Simmons from using or disclosing confidential and proprietary information;

  3. prohibiting Simmons from contacting or soliciting, either directly or indirectly, existing or prospective customers;

  4. prohibiting Simmons from soliciting, either directly or indirectly, employees;

  5. requiring Simmons to return all property and confidential information;

  6. advising the clients he contacted and stole that he lied about Nelson moving to Florida, advising those same clients that he is currently under a Non-Disclosure and Non-Solicitation Agreement; and advising Stantec that he stole information from Nelson for a financial advantage.

b. A declaration that Simmons is bound by the continuing obligations of the Agreement;

c. An award of attorneys' fees and costs incurred in the enforcement of the Agreement and prosecution of this action; and

d. All further relief in Plaintiff's favor and against Simmons that the Court finds appropriate.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS AND CONTRACTUAL RELATIONSHIPS

61. Plaintiff incorporates by reference the foregoing allegations as if pled in full here.

62. The Defendant knowingly and willfully interfered with, and continues to interfere with, the relationship between Nelson and its clients by soliciting Nelson's client to leave Nelson under false pretenses and using the documents he stole from Nelson.

63. Defendant was and is fully aware that he solicited Nelson's clients with whom Nelson shared an advantageous business and/or contractual relationship that Nelson relied on said arrangements for its financial prosperity.

64. Nelson took his interference a step further by lying to Nelson's clients and advising

those clients that Nelson was "relocating to Florida."

65. At all times material, the Defendant was aware that the foregoing actions were in direct violation of the Agreement with Nelson.

66. The above-described actual and/or threatened conduct of the Defendant is the direct and proximate cause of immediate and irreparable harm to Nelson.

67. The Defendant' actual and/or threatened actions will continue to cause Nelson irreparable harm if not enjoined.

WHEREFORE, Nelson respectfully requests judgment in its favor, and against Defendant, as set forth in its Prayer for Relief.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Nelson Worldwide, Inc. respectfully requests that, due to the ongoing, and clearly unlawful acts of Defendant, the Court:

(1)    Enjoin Defendant from contacting Nelson current clients; AND

(2)    Enjoin Simmons from using any information he uploaded from Nelson's server; AND

(3)    Enjoin Defendant from contacting Nelson current or former customers or prospects, and/or accepting business from Nelson's current and/or former customers or prospects and/or diverting the patronage of Nelson's current or former customers or prospects; AND

(4)    Compel Defendant to cease and refrain from using any Nelson documents, information, data, files, or other materials; AND

(5)     Compel Defendant to immediately return to Nelson all originals and copies of any documents, information, data, files, or other materials, in any form, that Defendant, individually or collectively, took, copied, caused to be taken or copied, or received from Nelson; AND

(6)     Award Nelson compensatory damages, punitive damages, and statutory damages resulting from Defendant' conduct.

Nelson further prays that the Court will award Nelson costs of suit and attorney's fees, as well as any other remedies and just relief the Court deems appropriate.

## JURY DEMAND

Nelson herein demands a jury on issues so triable.

## DEMAND TO PRESERVE EVIDENCE

Defendant is hereby directed to preserve all physical and electronic information pertaining in any way to Nelson and Nelson's causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and correspondence with any former clients of and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

**GOLDBERG SEGALLA, LLP**

Date:  2/9/24                              By: */s/ Angela A. Cronk*
                                          Angela A. Cronk, Esq. (83981)
                                          1700 Market Street, Suite 1418
                                          Philadelphia, PA 19103
                                          T: (267) 519-6800
                                          F: (267) 519-6801
                                          acronk@goldbergsegalla.com
                                          abeck@goldbergsegalla.com

*Attorneys for Plaintiff Nelson Worldwide, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this date, true and correct copies of Plaintiff's Verified

Complaint was served via Hand-Delivery and Overnight Delivery upon the following:

Andrew Simmons
2 Danbury Court
Mount Laurel, NJ 08054

**GOLDBERG SEGALLA LLP**

BY:    ***/s/ Angela A. Cronk*** _____
       Angela A. Cronk, Esquire
       *Attorney for Plaintiff*
       *Nelson Worldwide, LLC*

Dated: 2/9/24

## **VERIFICATION**

I, Leigh Boyer, General Counsel to Nelson Worldwide, LLC, hereby state that I am authorized to make this Verification on behalf of Nelson Worldwide, LLC., and I further verify that the statements set forth in the foregoing Complaint for Injunctive and Other Relief, and Damages are true and correct to the best of my knowledge, information and belief.

I understand that any false statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities, and further subject to the penalties of perjury under 28 U.S.C. § 1746.

Leigh Boyer, Esq., General Counsel on
behalf of Nelson Worldwide, LLC

DATE: 2/9/24

Exhibit "A"

**NON-DISCLOSURE, NON-SOLICITATION, AND PROPERTY RIGHTS AGREEMENT**

I, _____ANDREW SIMMONS_____, an employee, agent or subcontractor of Nelson & Associates Interior Design and Space Planning, Inc., a Pennsylvania corporation ("NELSON"), for good and valuable consideration, receipt of which is hereby acknowledged, agree upon the following terms and conditions concerning the matters described herein:

1.    ***Disclosure of Information***. During my engagement with NELSON, I will have access to certain information not generally known to the public or the competitors of NELSON relating to the business of NELSON, including, but not limited to, information concerning NELSON's services and sales, customers and prospective customers, pricing formulae, current or future marketing strategies, sources of supply, computer programs, data bases, system documentation, manuals, formulae, processes, methods, designs, machines, ideas, improvements and/or other proprietary and confidential information belonging to NELSON or relating to NELSON's affairs (collectively, "Confidential Information").  With respect to the Confidential Information, I agree as follows:

(i)  I acknowledge that all Confidential Information is the confidential and exclusive property of NELSON and may not be disclosed to anyone for any purpose whatsoever except to employees of NELSON in furtherance of NELSON's business.  I shall not disclose to any other person or entity any of the Confidential Information, without the prior written consent of NELSON.  I shall not make any use of Confidential Information except in the discharge of my obligations and duties while engaged by NELSON. I shall take proper and appropriate steps at all times to protect the Confidential Information.  The foregoing requirements as to confidentiality and nondisclosure shall not apply to information that is in the public domain or becomes part of the public domain through no fault of mine or that is in my possession prior to receipt from NELSON.  The foregoing requirements of confidentiality shall survive termination of my engagement with NELSON.

(ii)  All documents, records, apparatus, equipment, and other physical property furnished to me by NELSON, or produced by myself or others in connection with their engagement with NELSON shall be and remain the property of NELSON solely and shall be returned to NELSON immediately as and when requested by NELSON.  Even if NELSON does not so request, I shall return and deliver all such property to NELSON upon termination of my engagement.

2.    ***Non-Solicitation Covenant***.  During the period that I am engaged by NELSON to render services and for a period of one (1) year thereafter, I covenant and agree that I shall not, without the prior written consent of NELSON, directly or indirectly, (i) solicit, induce, divert, employ, engage or otherwise interfere with any of NELSON's employees, agents or 1099 consultants, and/or (ii) solicit or otherwise do business with any current customer or known potential customer of NELSON as of my termination date so as to offer, sell or provide any product or services that would be competitive with any products or services sold, provided by or being developed by NELSON during the period that I am engaged by NELSON, and/or (iii) attempt to persuade any current customer, known potential customer, vendor or supplier of NELSON as of my termination date to discontinue its relationship with NELSON.

3.    ***Intellectual Property, Inventions, and Discoveries***.  I agree that all ideas, designs, discoveries, inventions, and improvements relating to NELSON's business, Nelson's actual or demonstrably anticipated research or development, or any other subject matter which comes to my attention by virtue of my association with NELSON, whether conceived, developed, written, prepared, or revised by me alone or in conjunction with others and whether or not during my regular working hours or on NELSON's premises, shall be considered a work made for hire and shall be the sole and exclusive property of NELSON.  I shall promptly disclose and assign to NELSON, in writing, any and all Developments.  Whenever requested to do so by NELSON, at NELSON's expense, I shall: (i) assist NELSON and its agents in securing for NELSON and/or its nominee(s) the sole and exclusive right, title, and interest in and to any such Developments and (ii) execute and deliver any instruments and documents as NELSON may deem necessary or advisable to evidence, establish, maintain or defend NELSON's rights in or to such Developments.  In the event that NELSON is unable, for any reason whatsoever, to secure my signature on any letters, patent, copyright, or analogous protection relating to any Development, I hereby irrevocably designate and appoint NELSON and its duly authorized officers

and agents as my agent and attorney-in-fact, to act for, and on behalf or instead of, me to execute and file any such application (or otherwise) and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent, copyright, or other analogous protection thereon with the same legal force and effect as if executed by me.

4.  **_Remedies_**.  NELSON and I agree and stipulate that the agreements and covenants as set out above in Sections 1, 2 and 3 (collectively, the "Covenants") are fair and reasonably necessary for the protection of the business, goodwill, trade secrets and other protectable interests of NELSON.  I agree that, in the event I breach or threaten to breach any of the Covenants, NELSON shall be entitled to both a preliminary or permanent injunction to prevent the continuation of such harm.  Nothing contained herein shall be construed to prohibit NELSON from also pursuing any other remedies.  In the event that NELSON institutes suit to enforce this Agreement, NELSON shall be entitled to recover reasonable attorney's fees and costs in connection with such enforcement.

5.  **_Miscellaneous._**

5.1     I intend that the rights and obligations created by this Agreement shall survive the expiration or termination for any reason of my engagement with NELSON.

5.2     I agree that if any provision of this Agreement shall be held invalid or unenforceable, the remainder of this Agreement shall, nevertheless, remain in full force and effect.  If any court or agency shall determine that the scope, duration or geographical limits of the Covenants contained in Section 2 are unenforceable, it is the intention of the parties that the Covenants set forth therein shall not thereby be terminated, but shall be deemed amended to the minimum extent required by such court and/or agency to render it valid and enforceable.

5.3     This Agreement shall inure to and shall be binding upon the parties hereto, the successors and assigns of NELSON and my heirs and personal representatives.

5.4     The waiver by NELSON of any breach or violation of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or violation hereof.

5.5     This Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania without regard to internal conflict of law principles.  Any suit, action or proceeding concerning any disputes, controversies, or claims arising out of or relating to this Agreement (collectively the "Dispute"), shall be instituted with a state or federal court of competent jurisdiction located in Philadelphia, Pennsylvania and each party irrevocably submits to the jurisdiction and venue of such court for such purposes.  Notwithstanding the above, NELSON shall have the right, exercisable in its sole discretion, to resolve any Dispute, whether initiated by me or NELSON, by final and binding arbitration held in Philadelphia, Pennsylvania, unless both parties agree otherwise, under the rules for resolution of employment disputes as set forth by the of the American Arbitration Association.

5.6     This Agreement contains the entire agreement between NELSON and me.  No change, addition, or amendment shall be made except by written agreement signed by NELSON and me.

Signature:  _____

Print Name:  ANDREW SIMMONS

Date:  02/06/15

Exhibit "B"

From: Andrew Simmons                                    To: Samer Hamde
100 S Independence Mall W                               National Practice Leader
Philadelphia, PA 19106                                  Nelson Worldwide
asimmons@nelsonww.com
215.825.6634
January 3, 2024


Dear Samer,
I hope this letter finds you well. It is with mixed emotions that I write to formally tender my resignation from my position at NELSON as a Senior Project Manager. My last day of employment will be Wednesday, January 17, 2024, providing the customary two weeks' notice.

I have had an extraordinary journey the last 9 years working with several amazing groups of people and offices on really exciting projects and opportunities.  I enjoyed my time working alongside NELSON Leadership and those on our team.

However, after much reflection and consideration, I have decided to pursue a new path in my career. While it was a difficult decision to make, I believe that this transition will allow me to explore new opportunities and continue to grow in my professional journey.

Please know that I am committed to ensuring a smooth transition before my departure. I am happy to assist in any way possible and will continue to work towards the completion of my active projects or providing documentation to facilitate the handover process.

Once again, thank you for the opportunities and support provided to me during my time at NELSON. I am grateful for the memories and I will always cherish the relationships I have built with my colleagues.

Wishing you and the entire team continued success in all your future endeavors.

Sincerely,

Andrew Simmons

cell 717.829.1395

Exhibit "C"

Excel Data from Simmons Computer

Exhibit "D"



p: 612.638.6341
m: 612.819.5290
NELSONWORLDWIDE.COM

**From:** Ike Ogbue <IOgbue@nelsonww.com>
**Sent:** Monday, January 29, 2024 5:23:54 PM
**To:** K███████████████████████████ Cheryl Marshall <cheryl.marshall@ascension.org>; Kyle Peterson <KPeterson@nelsonww.com>; CSpigler@nelwonww.com <CSpigler@nelwonww.com>
**Subject:** RE: Letter of █████████████████████

Good afternoon, ████

Thank you for your voicemail. I was somewhat taken aback by your comment that implied that NELSON is "relocating to Florida", and that you have chosen to stick with the team that had worked on your project to date. This is unfortunate. Of course, you are within your right to do so. I would, however, like to respond to the presumption you make.

NELSON is not 'relocating' to Florida. We have offices in a number of cities in the United States, with teams of designers in these cities – designers that cater to the needs of all our clients. The two folks that you referred to, in your voicemail were not the only team members at NELSON that worked on your project. Cheryl Spigler and Carly Moore also work on your project. They have continued to do so, in the past two weeks since Andy Simmons and Mike Wuerger left NELSON. Andy and Mike worked out of the Philadelphia office. So do Cheryl Spigler and Carly Moore. Your project is in New York. We would have transitioned team members in New York on to the project, during Construction Administration, accordingly.

As I mentioned, earlier, it is unfortunate that you are looking to take your project away from NELSON. It is your prerogative, but please let it not be under the wrong guise. I hope to be granted the opportunity to chat with you, in the next day, irrespective of your decision. Our industry is made up of members of a 'small community'. No one knows what the future holds. It is only right, though, that one treats another, in a fair and equitable manner. We would love to be given the opportunity to see the project out, with you and for you. We would be happy to continue the relationship with you, if you choose to stay with NELSON. We hope that you do.

Thank you,

Ike Ogbue



**Ike Ogbue**
**RIBA, LEED AP (BD+C)**

4

Director
Senior Project Manager
Healthcare

# NELSON

p: 904.301.9367
NELSONWORLDWIDE.COM

**From:** ███████████████████████████████
**Sent:** Friday, January 26, 2024 4:11 PM
**To:** Ike Ogbue <IOgbue@nelsonww.com>; CSpigler@nelwonww.com
**Cc:** Jennifer Richards <jennifer.richards2@ascension.org>; ███████████████
**Subject:** Letter of Agreement ███████████████████████

You don't often get email from ███████████████████████

**TAKE CARE:** This email message is coming from outside of NELSON.

This message was sent securely using Zix®

Please be advised that in accordance with Section 14 of the Letter Agreement  Revised November 15, 2022 we are exercising our right to terminate this Agreement upon 7 days written notice.
Please let me know if you have any questions or concerns.  Kathy Connerton



Exhibit E

Voicemail from KC to Ogbue